(March 27, 1997)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WALTER R. RUFIN, Appellant. [655 NYS2d 672] —Mercure, J. P. Appeal from a judgment of the County Court of Columbia County (Leaman, J.), rendered July 7, 1995, upon a verdict convicting defendant of the crime of criminal sale of a controlled substance in the third degree.

On the afternoon of February 1, 1995, officers from several law enforcement agencies including the City of Hudson Police Department and the State Police conducted a coordinated drug enforcement effort in the vicinity of the intersection of Third Street and Warren Street in the City of Hudson, Columbia County. Hudson Police Chief Edward Eisley headed up the effort, acting as senior investigator, liaison coordinator with State Police Community Narcotics Enforcement Team Investigators Steven James and Patricia Farrell and as a field surveillance officer, attempting to observe the drug transactions and to identify the participants. In the latter capacity, Eisley directed Hudson Police Department Officer Edward Rivenburg to take up a surveillance position in a specially equipped van where he could videotape the street scene. At approximately 5:52 P.M., Eisley received a radio communication from James and Farrell indicating that they had just completed a drug purchase and identifying the seller as a black male with slight facial hairs, wearing a "brownish-greenish jacket with a dark knit cap, blue jeans and boots". Eisley immediately relayed that information to Rivenburg, who was able to identify the subject as one of the individuals who had been present on the street all afternoon and who was prominently depicted on the videotape. Due to the continuing nature of the operation, no arrest was made at that time.

On February 3, 1995, James and Farrell separately viewed portions of the videotape and each identified defendant as the person who had sold them cocaine. On February 17, 1995, each also identified defendant on a photo array that Eisley had prepared. Defendant was indicted for criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the seventh degree. Following defendant's arraignment, the People timely served notice pursuant to CPL 710.30 that James had participated in the two identification procedures described above; as the result of apparent inadvertence, however, no corresponding notice was provided concerning Farrell's observations. Following a *Wade* hearing, County Court concluded that neither identification procedure was suggestive and that James had an independent basis for a prof-

fered in-court identification. County Court accordingly denied defendant's suppression motion with regard to James. As for Farrell, County Court ultimately ruled that the People's failure to serve a CPL 710.30 notice was not fatal due to the fact that Farrell's identifications were merely confirmatory (*see*, *People v Wharton*, 74 NY2d 921, 922-923). Nonetheless, County Court indicated that "simply as an exercise of judicial discretion", a *Wade* hearing would be conducted prior to Farrell's trial testimony. Defendant did not avail himself of that opportunity, and at trial Farrell identified defendant as the person who had sold her and James $40 worth of crack cocaine on February 1, 1995. Convicted after trial of criminal sale of a controlled substance in the third degree and sentenced as a second felony offender to a prison term of $7^1/_2$ to 15 years, defendant now appeals.

A number of defendant's contentions may be easily resolved. First, we are not persuaded that, because defendant was not provided with notice pursuant to CPL 710.30, County Court erred in permitting Eisley's in-court identification of defendant as one of the people that he saw on the street on the afternoon of February 1, 1995. The simple fact is that, although Eisley clearly made an observation of defendant "at the time or place of the commission of the offense" (CPL 710.30 [1] [b]), he participated in no subsequent police-initiated identification procedure so as to bring his proffered in-court identification within the purview of CPL 710.30 (*see*, *People v Mullins*, 221 AD2d 770, 771, *lvs denied* 87 NY2d 1022, 88 NY2d 851; *People v Peterson*, 194 AD2d 124, 127-129, *lv denied* 83 NY2d 856). Under the circumstances, no statutory notice was required (*see*, *id.*). We are also unpersuaded that County Court erred in permitting James' in-court identification of defendant. The record provides ample support for County Court's conclusion that neither identification procedure was suggestive and that James' in-court identification had an independent basis derived from his viewing of defendant in connection with the February 1, 1995 drug transaction (*see*, *People v Thompson*, 231 AD2d 804; *People v Stackhouse*, 226 AD2d 822, *lv denied* 88 NY2d 995).

There is merit, however, to the contention that County Court was incorrect in its determination that Farrell's identifications of defendant were merely confirmatory, thereby obviating the need for a CPL 710.30 notice with regard to them. In *People v Wharton (supra)*, a majority of the Court of Appeals held that a *Wade* hearing was not required where an undercover narcotics police officer, five minutes after purchasing drugs in a "buy

and bust" operation, drove by the site to view the seller and then three hours later identified him through a one-way mirror at the police station (*id.*, at 922-923; *see, People v Newball,* 76 NY2d 587, 592). The rationale underlying the Court's determination was that "[t]he viewing by this trained undercover narcotics officer occurred at a place and time sufficiently connected and contemporaneous to the arrest itself as to constitute the ordinary and proper completion of an integral police procedure" (*People v Wharton, supra,* at 922-923; *accord, People v Browne,* 234 AD2d 712). In addition, the Court noted that the observation had the beneficial effect of "len[ding] assurance that an innocent person was not being detained by reason of a mistaken arrest" (*People v Wharton, supra,* at 923).

Aside from the identification by a trained narcotics officer, this case has none of the critical earmarks of *Wharton* as there is no evidence in the record to support a finding that either of the viewings took place at a time or place connected to or contemporaneous with defendant's arrest (*see, People v Newball, supra,* at 592; *People v Fulton,* 223 AD2d 932; *People v Munroe,* 185 AD2d 530, 531-532). We are also unpersuaded by the People's contention that they actually provided sufficient notice of Farrell's photo identification because her initials and signature could be found on the reverse side of the original photo array, which was available to defendant for his inspection. The People cannot rely on any form of constructive notice, and the fact that the inadequacy could have been cured by discovery is unavailing (*see, People v Lopez,* 84 NY2d 425, 428-429).

Nonetheless, although the People's failure to provide a CPL 710.30 notice with regard to Farrell may not be excused, the error will not be fatal in the face of a showing that there was " 'no reasonable possibility that the error might have contributed to defendant's conviction and that it was thus harmless beyond a reasonable doubt' " (*People v Johnson,* 80 NY2d 798, 800, quoting *People v Crimmins,* 36 NY2d 230, 237). We believe that such a showing has been made in this case (*see, People v Harris,* 80 NY2d 796; *People v Thomas,* 200 AD2d 642, *lv denied* 83 NY2d 859; *cf., People v Johnson, supra*). James, an experienced narcotics investigator trained in observation skills, made positive identifications of defendant only days following the incident and then at the time of trial. These identifications were substantially buttressed by Eisley's testimony and the videotape prepared by Rivenburg, which unequivocally placed defendant on the scene at the time of the drug transaction and effectively destroyed his alibi defense. Under the circum-

stances, we may accurately characterize Farrell's identification testimony as cumulative and conclude that its admission could not have contributed to defendant's conviction.

Defendant's remaining contentions are unpreserved for our review or found to lack merit.

White, Casey, Peters and Spain, JJ., concur. Ordered that the judgment is affirmed.